Case number 24-7120, Bruce Bunting v. District of Columbia CVS Pharmacy, LLC Mr. Lebowitz for the balance, Ms. Smith for the equals Uh, Mr. Lebowitz I was told to try to make this higher Good morning, your honors Good morning On December 24th, 2024, Bruce Bunting, Dr. Bruce Bunting did something we all do, something that's common in an everyday experience. He ran to the CVS nearest house on MacArthur Boulevard in the Palisades to pick up some things on the day before Christmas. When he walked out of the CVS, on his first step, he slipped and fell on the wet ground. There's video of the fall. There's pictures taken shortly after the fall. The court below granted CVS summary judgment finding that the plaintiffs were required to show through expert testimony that the ground, which contained a snow melt product mixed in with the water, or as visible in the photo, was present in the area where he fell. Require that expert testimony be shown and that that expert testimony have tested the surface with a mixture of salt and water. That's incorrect under the law. This court's duty in a diversity case governed by DC law is to achieve the same outcome that would result if the DC Court of Appeals considered the case. That's from Nova. And to do that, the court looks to published opinions from the Court of Appeals. We have guidance very recently from the DC Court of Appeals on a slip and fall case. In supplemental authority submitted by Appellant Jenkins v. Redcoats, decided two months ago by the Court of Appeals, the Court of Appeals looked at the issue of whether expert testimony is needed in a slip and fall case. And they said, in a typical slip and fall case, lay people do not require expert assistance to determine if a warning was adequate. They said that slip and fall cases will usually fall into the common sense category, and a lay juror could determine from their common knowledge and everyday experience whether defendant exercised reasonable care in warning passersby the hazard caused by the wet floor. Mr. Weboats, if this court were to agree with you that an expert was not necessary to establish the standard of care under DC law, what would be the next step procedurally? To remand for continuing for trial. I mean, there was no Daubert challenge filed. There might be motions that Lemonet filed. Would we have to also conclude that there was a genuine issue of fact for the jury? And if we were, would we have to reach that determination in order for you to proceed on remand? I don't believe so, Your Honor. I mean, the court does review this case de novo, and certainly could. But the full gist of the court's opinion granting summary judgment was just that an expert had to test the substance with water and salt mixed together. That essentially guided all of the opinions. And if the court agrees with the DC Court of Appeals that we don't need expert testimony, then I think the issues that remain are jury issues, right? Everything else in this case goes to the weight of the jury, right? And I'm happy to talk about that because that is the second. I view this appeal as involving two issues. There is a third issue, which is the negligence per se regulation. But at crux here, there's two issues. One, do we need an expert? Two, did the experts we provided, you know, is their data reliable and sufficient under Rule 702? But in all the cases we cite on the reliability issue, make it clear that that's an issue for the jury, right? The differences in methodology in testing is a jury issue. So if the court believed that—so the court would be within the rights here to remand it based on the fact that no expert testimony was needed. But if the court did decide to explore whether expert testimony is needed, I think this court could be easily guided in that determination by the cases cited in Appellant's brief, including, you know, this issue has been looked at by other circuit courts. So we cite to Buscaglia of the United States, 25 F. 3rd, 530, the Seventh Circuit in 1994, which was evaluating whether a tile that was tested for slipperiness that had wax on it needed to have wax on it when it was tested, right? Could they test just water and wax or just wax? How about addressing our own precedent, Briggs, which Judge Edwards authored, was pretty categorical about the fact that the D.C. Court of Appeals requires expert testimony, I think in his language, that a number of cases that on first blush appear to be within the realm of common knowledge. And we've followed that since 2007 when it issued. Correct, Your Honor. In Judge Edwards, in Briggs, as you're obviously familiar, surveyed D.C. Court of Appeals opinions in reaching that conclusion to look for are there cases that—is this case like those others, right? And the latest case that was surveyed was from 2000, right? If you look at the Court of Appeals cited, those cases surveyed, the last one was from 2000. Cozio v. D.C. was ruled on in 2008, about a year after Briggs. And that's a slip-and-fall case. And in Cozio, that's a slip-and-fall case where an inmate at a jail slipped in a shower, right? And at first, the court said, oh, this is very complicated. How do you maintain showers in prison, right? Like, what's the schedule? And then the Court of Appeals looked at it and said, no, this is actually just about, was the surface wet and was there notice? And the Court of Appeals said, yes. The plaintiff can show that without expert testimony. It's a slip-and-fall case. But the difference in your case is that, as I understand it, Bunting said, no, this wasn't ice. This was water mixed with salt. And it made some sort of a slurry mixture. And the expert testimony, as I understand it, and that is, I think, within lay experience, is that that's exactly what you do. You put salt down. It doesn't make it more slippery. It makes it less slippery. But your client seems to think, no, that addition by CVS was negligent in putting that salt down because, if I'm wrong, tell me, because it isn't ice, it's water. And salt and water, in his view, and I guess in his expert's view, although that's very far from clear, makes it worse. No, Your Honor. And I thought both experts said it still remained at this 0.5, whatever that equation is, to test the coefficient of friction. Yes, Your Honor. So there are a couple of points that Your Honor raises, and let me see if I can deal with them sequentially. First, the claim in this case is that he slipped on a wet surface. If you look at the photograph submitted as part of the record and included in the brief, you can see that there is what we see all the time as people walk around in the city. There is some sort of snowmelt product on the ground around where he slipped. But there's a photograph the jury will get to see and a video of this. So now the issue on whether that is salt, nobody knows what that substance is. CVS couldn't tell us. Their vendor couldn't tell us. Nobody knows what the white substance we see on the ground is. So all of us, when we walk down the street, we see something for snowmelt. We just say salt. It doesn't mean it's actually salt. And so if the requirement is that you must test with the exact chemical compound that was present at the time, that's too high a standard. We don't know what that substance is. And that's where these cases like Buscaglia get in the Seventh Circuit as well as, you know, if you see where it's been cited, the Eleventh Circuit adopted the same findings as did the Fourth Circuit. So the question isn't, was this a different substance? The photograph says it all. You can see how much of this white compound is on the ground where he fell. The photograph was taken shortly, you know, within minutes of the fall by his neighbor. So the question here isn't that he slipped. Is it in the record that this was some sort of usual substance that CVS put? I mean, how, why did the experts not be able to tell what the substance was? Because it was something that they normally put down. CVS couldn't tell us. We asked, and CVS had an outside vendor, a greenscape, that came in and did salt. Everything from the record suggests that they put down the snowmelt products six days prior to the fall because that's when the snowstorm was and that it remained there. And the issue with that substance being on the ground is actually, it doesn't go to the slipperiness of the area. It goes to the notice issue, which is because this substance had been there for six days and CVS had never cleaned it up, right? Which the record is replete with statements by the CVS designee and the manager saying, oh, if I'd seen this, I wouldn't have cleaned it up, right? We don't clean up that substance. So they had seen it, that it goes, the idea of the presence of that salt is a notice issue, but everyone can see the ground where he slipped, that it was wet and that he slipped on a wet substance. And the way that is tested, right? Both experts, and your Honor brought this up, the expert for defendant and the expert for plaintiff tested the surface for the coefficient of friction using water, because that's what you do in these cases. And there are cases talking about that. Milan of the MSC cruises out of the Southern District of Florida, which we cite in our brief talks about that. And the DC Court of Appeals has talked about the standard needed for experimental evidence, right? Recreation evidence, right? In Lewis v. United States and in Butts v. United States. And they say that no event could be perfectly reenacted, right? So the presence of this substance, and we don't know what it is, right? Because CVS couldn't tell us and they're the ones who had it placed there or placed it there themselves, is a red herring, right? This is just a slip and fall case. He walked out of his CVS and he slipped and he fell, right? And we have video of the fall and we have photographs of the surface where he slipped and we have testing by both experts for plaintiff and defendant, both of which at some point found that it fell below the 0.5 coefficient of friction, which comes from the ASTM standard for slippery surfaces. So the idea here is that, you know, you're testing the surface. You're not testing the substance. And that... All right, do you have any questions? Any questions? Okay, you're over your time. We'll give you a couple of minutes to reply. Thank you, Your Honor. Ms. Smith? May it please the court, Jessica Smith for District of Columbia CVS. So the district court properly granted summary judgment here. This is a case that required expert testimony on the standard of care and on the deviation from the standard of care. Plaintiff, contrary to what's been alluded to here today, unequivocally testified that he fell on a mixture of salt and water that made a slurry. And as Judge Henderson alluded to earlier, we all know that salt and water is a mixture that generally salt on a substance makes it less slippery. Here, if plaintiff is claiming that that actually made the surface more slippery, he was required to provide expert testimony explaining that that presence of salt was in fact a deviation. Now, Dr. Harris... You know there was salt? Plaintiff identified it as salt multiple times in his testimony. He uses salt. He says at page 82 and 83 multiple times that he's 100% certain that he slipped on water and salt. In fact, he goes so far as saying that his face was close to the ground. He had opportunity to observe it for a long period of time. So plaintiff himself gives no doubt that it was in fact salt. So here we're talking about the mixture of salt and water, the impact of which is not within the can of your average juror. So expert testimony was in fact required here. Now the testimony submitted... I mean, under our case law, we consider de novo what the standard of care is. And for that, we have to look at the D.C. Court of Appeals opinions, which seem to have changed substantially since our 2007 opinion. So like in red coats, I mean, it seems that the D.C. Court of Appeals is moving away from expert testimony in these types of slip and fall cases. So what are we supposed to do with that seeming evolution in the D.C. Court of Appeals? So I'd also like to highlight that Rule 702 has been amended with the idea of increasing the role of gatekeeper of the courts to keep out these opinions, expert opinions that are... Well, but that's a secondary question. As first questions, do you even need an expert in this type of case? And on that question, the D.C. Court of Appeals in red coats and COSEO and other cases seems to be moving away from its earlier standards or maybe completely having moved away. And if our job sitting in diversity is to follow the D.C. Court of Appeals as it is, how do you prevail under the current standards in the D.C. Court of Appeals? Well, this case is different than some of the ones that have been discussed because it involves this issue of the salt in addition to water. This is not an issue. There's a standing puddle that has been known about for a very long time. Everyone can observe that there was a puddle that could be slippery. Here, we have this idea that it's the salt that is something that all plaintiff's experts agree is put down to improve the safety of a surface is now being alleged that it, in fact, makes it less safe and more slippery. So this is distinguishable from the cases that plaintiff is relying on here. Because we have this unique element, it's not just a slip and fall for that reason where he's actually claiming that something that is generally used to protect pedestrians is, in fact, unsafe here, especially under the conditions that we have here where we knew temperatures were at freezing and were planned to go back to freezing the day after this event and the salt was just present on a warm day. And in fact, Lisa Rose says that 24 hours in advance is the appropriate time frame to apply the salt. So we have all these factors weighing against the idea that this is just a simple issue. Whether the salt was properly applied or not is not a question about the slip and fall. That's a question about the duty of care. So that's a different question. Right. Well, even so, this salt issue is unique to this case compared to the other ones that have been discussed. Also, I have the same concern that my colleague just raised. I'm not understanding what are you making of the salt? How does that work favorably for you? That doesn't mean, they don't mean to suggest it wasn't slippery because there was salt there. They may have observed, as they did, there was a mixture of salt and water. But so what? Does that do for you? So plaintiff is claiming that this substance, the salt, which is meant to make surfaces and all of the experts say application of salt makes the surface less slippery. He's claiming here that it made it more slippery. There's no expert testimony that is capable of demonstrating that because their expert never tested the coefficient of friction. He never indicated how salt, in fact, in this instance, would make a substance more slippery. How the salt would react to the water with the water under these conditions to, in fact, increase a slip hazard. He is nothing supporting that because his expert. Is there no evidence that says, is there no evidence in the record to indicate that you can slip and fall on this kind of a surface that includes salt and water? There's certainly no evidence suggesting that if there's salt there, you won't slip. Well, anything is possible, but the plaintiff had to actually prove what the standard is. Prove what? I'm trying to understand what you're trying to make of the salt. He had to actually prove that there was a deviation from the standard of care by virtue of the fact that the salt present in conjunction with the water made the surface below the coefficient of friction that everyone agrees is the standard of care, which is 0.50. He never submits any expert testimony demonstrating that because his expert, in fact, did not give us a coefficient of friction. He claimed that it was only testable through a non-portable James machine, which is a laboratory device. But whether the expert testimony is sufficient is a different question from whether you need expert testimony in the first instance or whether this is something within the ordinary understanding of a layperson, i.e., a juror. I do understand that. And the D.C. Court of Appeals seems to have repeatedly said in recent years that this type of, you know, that you rarely are going to need expert testimony for this type of case. And only maybe in professional malpractice cases, you know, the rare instance is where you're going to need expert testimony. I mean, most jurors would be familiar, arguably, with, you know, going to a CVS on a rainy day and, you know, what that looks like in terms of water and salt or snow melt. Before you answer, am I wrong about the record? I thought that the plaintiff was the one insisting on expert testimony in the slurry, whatever it was, had to be tested. We are saying that the slurry, that the plaintiff had the obligation to test it under the comparable conditions. So the comparable conditions here would be the mix of the water and the salt, because this wasn't an unknown substance. This was known and specifically identified by plaintiff to be something that actually contributed to his fall. And their expert did not test under those conditions. He only tested under water. And all the experts agree that the presence of salt is actually going to make this less slippery, which would, therefore, make it within the standard of care and not a deviation.  So I read his claim to be, in part, that what was negligent was CVS putting this, whatever the substance was, down and making it less safe. That is part of his claim. That's true. And essentially, first of all, there's no evidence that CVS itself did that. The only thing is that their contractor, the professional snow contractor did. But setting that aside, and this is why I brought up the temperature before, the temperature under this condition, we had freezing before and after. So according to plaintiff's own expert, that was sufficient to retreat for the freezing temperature that were going to be 24 hours in advance. Additionally, Lisa Rose actually testified that you would only need to clean up salt either at the end of the snow event or at the end of the season. So in fact, using her own testimony, leaving the salt present was, in fact, not a deviation from the standard of care. So there's nothing that they can point to on that element to show that, in fact, CVS deviated from their standard of care by leaving the salt in place. Here's the question I need answered. Who started the whole expert testimony issue? I thought that from the way the plaintiff presented his case, he said what CVS did wrong was put whatever the substance down was to put it down. And that is something that it seems to me a lay jury cannot figure out. I agree with you. That is how the complaint reads, that this addition of salt is the deviation from the standard of care here. And the jury cannot know what... And he was fairly adamant about it, wasn't he? The negligence was the addition of this substance onto water. Yes. And I believe it's alleged in the complaint and the response to interrogatories that way. And Lisa Rose does not fit the bill of setting the standard of care there, even if we get to the sufficiency because, A, she only relies on standards applicable to snow management companies. And for the reasons I've already addressed, her testimony actually indicates that the salt was appropriate at this time. So I see that my time is almost out, if anybody has anything else. If not, I'll rest on my brief. All right. Thank you. Thank you. Mr. Lebowitz, why don't you take two minutes? And let me just ask you this question. I view this case as your client started this whole expert testimony issue by saying, I'm not... It wasn't ice. It was water. And something was mixed with it, which made it worse. And is that within common knowledge? And that's what prompted this whole battle of experts. No, Your Honor. No, the challenge to the expert testimony comes solely from CVS. The complaint, as written, does allege that the slip and fall happened in an area that was salt mixed with water, but not that it was because of the salt that there was a hazard. It's because it was slippery, right? And so then... That's not what your client says, is it? Yes, that he slipped. I thought it was the addition... No, I thought it was the addition of this substance that was the origin of the negligence. You're saying that putting the substance down created the hazard. That's how I... That's what they were suggesting. Is that what you... No, Your Honor. What we're suggesting... Can you point us to something in the complaint that... I'm not... I can't point to something in the complaint, but I can point to both the... I can point to the expert report from Dr. Harrison. I can also point to our arguments in the summary judgment option. That, you know... And theories of liability may shift. If the complaint reads, you know, poorly in that regard, then, you know, the theory of liability may shift during the course of the... But I think that's how the district court looked at it. I don't... I can't... Let's see. Well, go ahead. Go ahead with your... That won't be the evidence at trial, right? The evidence at trial is that there was a slippery surface, right? And that the presence of the ice mix, the... I'm calling it salt, but we don't know that it's salt, right? The de-icing agent, right? Is an issue that it was there. But... And I want to correct something that has been said by CVS. We don't all know that salt on a wet surface makes it less slippery, right? We know that we put salt down on ice, but there's no evidence that there was ice here for six days, right? And so the issue... So what we see there is that there is... Is the jury going to be told what? It's up to you to decide that whatever was put on this made it more slippery. What is the jury going to be told? No, the jury is going to be told that this surface was wet and slippery. And when tested, it was fell below the standard, the coefficient of friction for slippery. I don't see that as what the experts said. They said it was 0.5. Right. That is the coefficient of friction. And that when tested wet, it fell below that coefficient friction, right? Okay. All the experts go out there and they test it, both defendant's expert and appliant's expert. And they find that the surface where he slept was under the 0.5 coefficient of friction, meaning it was too slippery. So the question isn't going to be... And if the presence of the contaminant is an issue, that's a jury issue, right? That is subject to cross-examination. The idea that the experts went out and tested with water, not with a mixture of salt or water. You know, the cases... What are they going to base their decision on? Whether this addition helped or hurt? They're going to base it on the expert testimony and the cross-examination of it. Right. And just to be clear, I'm out of time, but there is just no evidence that this ice has anything to do with this case. I think I heard you say they're going to base it on expert testimony. Is that correct? That they're going to... Well, no, they're going to base it on the video and the photographs. And that's going to tell them what the substance is? No, it can't be the plaintiff's burden to identify the substance that the defendant, CVS, can't tell us what it is, right? Plaintiff... Because otherwise, plaintiff would have had to scoop it up on the day he fell. You can't expect a jury to do that either. So I'm through. I'm confused as to what you think your complaint says. I thought the failure to remediate the situation was a principle. I'm not sure what you mean to say about putting down this substance was negligence. There I might... One wonders why not... Why wouldn't we need an expert? But failure to remediate, I don't know why you need an expert on that question. I thought that was your principle. Correct. That's what I said earlier. The presence of the snow melt product six days after it was applied shows us that CVS never went and cleaned up this area. They didn't remediate this situation, that it was wet from the snowstorm or from the rain. And for six days, no one... Without regard to whether there was a substance with salt in it. Correct. Just it was wet. Just it was wet. You're saying any... I thought the core argument, and we'll have to figure this out, whether you need an expert, core argument was anyone knows looking at this surface, no matter what's down there, it's slippery and you can fall and they didn't remediate it. Correct. Does it matter whether it's salt, sugar, pepper? It doesn't matter. It's wet and slippery. It's wet with water, which is in the realm of... And so a principle question for us, it seems to me, is whether you need an expert to deal with that and whether it's required under DC law. I don't believe you do, Your Honor. And this is the point about your opinion in Briggs is that if you did the same thing you did in Briggs and surveyed DC Court of Appeals opinions since Briggs, you'll come to Cozio and you'll come to Jenkins, right? And as Justice Rao points out, the Court of Appeals has moved away from needing experts in these kinds of cases. There is one from before Briggs, Levi, which is cited in Cozio, 697A2-1201 from 1997, which is also a prison slip and fall case. Later one too you want to look at, K.S. Condo. Take a look at that.  Yes, Your Honor. You didn't cite it. I'm sorry. Just to clarify, are there two separate questions about when an expert is needed? One, whether an expert is needed to establish the standard of care, which your argument is that there is no expert necessary for that. But then it does seem that the plaintiff here is trying to rely on expert testimony to show that the standard of care was not met. Are those two distinct questions or do they essentially collapse? They essentially collapse, Your Honor. And I think you can see that by looking at Jenkins, Cozio, Boff v. International Hotels from the district court, the federal district court. None of those cases required, they all talked about not needing an expert, and none of them required an expert for your second question either.  But you've tried to create a genuine issue of material fact by pointing to the expert testimony. So is there a genuine issue of fact without the expert testimony? Yes, whether or not the floor was slippery under the circumstances. Plaintiff says it was because he slept and they say it wasn't. But I think it's sort of a proof is in the pudding, right? Jenkins would have dealt with whether an expert was needed for your second step. Cozio would have dealt with it because they were challenging whether the sufficiency of the expert testimony. And none of those cases discussed needing an expert for that second step. Thank you. Thank you, Your Honor. Thank you.
judges: Henderson; Rao; Edwards